UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID JOHNSTON,

                              Plaintiff,

                                                        DECISION AND ORDER

                                                        06-CV-6001L

              v.

GENESEE COUNTY SHERIFF MAHA,
et al.,

                              Defendants.
_____

        Plaintiff, David Johnston ("Johnston"), commenced this *pro se* action under 42 U.S.C.

§ 1983, alleging that his constitutional rights were violated while at the Genesee County Jail,

awaiting trial on pending criminal charges.[1]  Plaintiff also purports to assert claims under the

Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as well as various other federal and

state statutes, both civil and criminal.

        Johnston asserts seventeen causes of action against over a dozen employees connected

with the Genesee County Jail.  Pending before the Court is the defendants' motion for summary

judgment dismissing the complaint, in part because Johnston failed to exhaust his administrative

_____

        [1] Johnston was convicted and is now committed to the custody of the Department of Correctional Services
("DOCS").  According to the DOCS internet inmate lookup service, http://nysdocslookup.docs.state.ny.us, he is not
eligible for parole until August 2013.

remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

Defendants also move for summary judgment on the merits with respect to three causes of action

that have been properly exhausted.  Defendants' motion is granted and the complaint is dismissed

in its entirety.


**I. Failure to Exhaust Administrative Remedies.**

Defendants move for summary judgment dismissing all but three of Johnston's claims

because of his failure to exhaust them as required by the PLRA.  Defendants contend, and I

agree, that Johnston has exhausted only his first, fourth and sixth causes of action, and that the

other claims must be dismissed for failure to exhaust administrative remedies.

The PLRA was adopted by Congress to stem the tide of often-frivolous prisoner

litigation.  The PLRA provides in part that "[n]o action shall be brought with respect to prison

conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted."  *Id.*

New York has established grievance procedures for county jail inmates.  The applicable

regulations provide, in part, that "[a]n inmate must file a grievance within five days of the date of

the act or occurrence giving rise to the grievance."  9 N.Y.C.R.R. § 7032.4(d).  The jail's

grievance coordinator must then issue a written decision on the grievance within five business

days.  The inmate then has two business days to appeal to the jail's chief administrative officer or

his designee, who is to issue a determination on the appeal within five business days.  9

N.Y.C.R.R. § 7032.4(h).

   The regulations further provided that "[w]ithin three business days of the receipt of the

chief administrative officer's determination, any grievant may appeal any grievance denied by the

facility administrator, in whole or in part, to the State Commission of Correction ... ."  9

N.Y.C.R.R. § 7032.5(a).  The grievance coordinator then has three business days to mail the

appeal, the accompanying investigation report and all other pertinent documents to the

Commission's Citizens' Policy and Complaint Review Council" ("CRC").  9 N.Y.C.R.R. §

7032.5(b).  The CRC is required to issue a written determination on the appeal within forty-five

business days.  9 N.Y.C.R.R. § 7032.5(d)(1).

   The only causes of action that have been fully grieved here are the first, fourth and sixth.

In the others, plaintiff either failed to pursue any appeal from the relevant grievance, or did not

pursue the appeal to its final step before the CRC.  That failure renders those claims unexhausted

for purposes of the PLRA.  *See Oliver v. Outhouse*, No. 9:06-cv-1412, 2008 WL 508909, at *3

(N.D.N.Y. Feb. 21, 2008) (dismissing claims by county jail inmate for failure to follow grievance

protocol outlined above); *Dye v. Virts*, No. 03-CV-6273, 2004 WL 2202638, at *5-*6 (W.D.N.Y.

Sept. 28, 2004) (same).

   Although plaintiff alleges that he "had grievances taken away from him," Dkt. #49-5 at 3,

he has presented no evidence, other than that one unsubstantiated assertion, that defendants in

any way interfered with his ability to file grievances.  The evidence shows, to the contrary, that

Johnston was able to make ample use of the grievance system, and that he filed numerous

grievances, apparently without undue difficulty, during his stay at the Genesee County Jail. *See* Dkt. #43-15. Accordingly, plaintiff's non-exhausted claims must be dismissed. *Gilliam v. Goord*, No. 05-CV-6429, 2008 WL 2704908, at *2 (W.D.N.Y. July 8, 2008); *see also Dostis v. Matthew*, Slip Copy, 2008 WL 3156926, at *7 (N.D.N.Y. Aug. 4, 2008) (stating that plaintiff had "presented no evidence to establish that ... defendants improperly deterred his filing of the grievance," and noting that "the record establishes that during his confinement at the [county jail] Dostis filed two grievances unrelated to the matters raised in his complaint"); *Ali v. Brink*, No. 00-CV-6557, 2008 WL 352282, at *4 (W.D.N.Y. Feb. 8, 2008) (dismissing inmate's claims for failure to exhaust where inmate failed to present "any evidence or details in support of his conclusory assertion that the lack of [a] grievance [wa]s the result of Defendants' interference").


**II. Exhausted Claims**

As stated, three claims have been administratively exhausted: the first, fourth and sixth causes of action. They must be dismissed on the merits, however.

In his first cause of action, Johnston contends that his placement in "isolation for violation of jail rules" concerning the possession of contraband violated his constitutional rights. Plaintiff contends that he was not given prior notice of this or an opportunity to be heard, and that his Eighth Amendment rights were violated when officers used force to remove him from his cell to be transferred to the isolation area.

From plaintiff's own allegations and testimony, it appears that this placement in isolation or administrative segregation only lasted three or four days; *see* Complaint ¶¶ 134-38; Plaintiff's

Depo. Tr. (Dkt. #43 Ex. A) at 15.  To the extent that plaintiff alleges that this placement violated

his due process rights, such a claim fails because there is no indication that this amounted to an

"atypical and significant hardship" compared to the burdens of ordinary jail or prison

confinement.  *See Sandin v. Connor*, 515 U.S. 472, 484 (1995); *Iqbal v. Hasty*, 490 F.3d 143,

161 (2d Cir. 2007), *cert. granted sub nom. Ashcroft v. Iqbal*, 128 S.Ct. 2931 (2008); *see, e.g.*,

*Griffith v. Hofmann*, No. 2:05 CV 126, 2008 WL 4682690, at *5 (D.Vt. Oct. 21, 2008)

("Standing alone, Griffith's four days in administrative segregation was not an atypical and

significant hardship").  Although it appears that Johnston lost some privileges during his brief

period of isolation, there is no basis upon which one could reasonably conclude that his

conditions of confinement were unusually harsh.

Plaintiff also appears to allege that his rights under the Eighth Amendment were violated

when he was forcibly removed from his cell during his transfer to segregation.  This claim fails

as well.  There is no evidence that plaintiff was injured, or that whatever force was used was

more than necessary to remove him from his cell.  *See United States v. Walsh*, 194 F.3d 37, 48

(2d Cir. 1999) (claim of excessive force may be established even if the victim does not suffer

serious or significant injury, *"provided that the amount of force used is more than* de minimis, or

involves force that is repugnant to the conscience of mankind") (emphasis added) (internal

quotation marks omitted); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (not "every push

or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a

prisoner's constitutional rights").

The remaining two claims raised by plaintiff, the fourth and sixth causes of action, relate to Johnston's claim that he was denied proper medical treatment, and dental treatment, respectively.  Johnston has failed to meet the standards for such Eighth Amendment claims established and articulated by the United States Supreme Court in *Estelle v. Gamble,* 429 U.S. 97 (1976), and accordingly, both these claims must be dismissed.

To prevail on such a claim, a plaintiff must demonstrate that the official acted with deliberate indifference to his serious medical needs.  *Id.* at106.  It is well established that mere malpractice, or disagreements between an inmate and the medical professional about the inmate's treatment, do not give rise to an Eighth Amendment violation.  *Id.*

There is also an objective and a subjective prong to such a claim.  First, the deprivation must be sufficiently serious; the medical provider must have been indifferent to the inmate's serious medical needs.  *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).  Second, the inmate must show that the defendant acted in wanton disregard of those needs; in other words, that the defendant had a culpable state of mind and intended wantonly to inflict pain.  *Id.*

The medical claims here relate to an incident that occurred on or about December 18, 2004, when Johnston allegedly fell, injuring himself.  The medical records demonstrate that he was taken to an outside hospital where he was treated and released the same day.  X-rays were taken of plaintiff, he was given medication, and diagnosed with degenerative lower back pain and a right knee contusion.

In view of the medical records demonstrating that Johnston received adequate followup care, including examinations by physicians and the prescription of medication, there is no

indication that Johnston had a serious medical need that went unattended nor is there any evidence that any of the defendants were deliberately indifferent to plaintiff's condition or that they failed to act with the intent to cause him harm or pain.

Similarly, Johnston claims that he was denied certain dental care.  Plaintiff has also failed here to establish the requisite matters necessary for such a claim.  Plaintiff contends that he had to wait two months to see a dentist but he admits that the dentist did fill cavities that he had and took x-rays related to that treatment.

There is no evidence that the dental problems were unusually severe and it appears that they were properly attended to.  Johnston may have preferred that his complaints be attended to more quickly, or that defendants have taken some other course of treatment, but he has not presented any facts which could establish either the objective or the subjective prong of the requisite test for establishing an Eighth Amendment violation.  *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (inmate's "mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation"); *Rodriguez v. Ames*, 224 F.Supp.2d 555, 561 (W.D.N.Y. 2002) ("Although a delay in medical care can demonstrate deliberate indifference to a prisoner's medical needs, a prisoner's Eighth Amendment rights are violated only where the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment") (internal quotation marks omitted).

### III. Merits of Unexhausted Claims

Most of plaintiff's claims have been dismissed here for failure to exhaust.  Even if they were not subject to dismissal for that reason, however, I would dismiss them all on the merits.

The Court has examined each of Johnston's claims, defendants' motion papers, and plaintiff's response, and even were it not for the failure to exhaust, none of plaintiff's claims would withstand scrutiny.  Some of plaintiff's claims (such as those purportedly based on alleged violations of criminal statutes) are facially defective.  Even those that state a claim on their face, however, would be subject to dismissal on defendants' motion for summary judgment, as plaintiff has failed to present any evidence giving rise to a genuine issue of material fact as to any of them.

A party faced with a well-founded motion for summary judgment may not "rest upon mere conclusory allegations or denials, but [must] instead ... set forth 'concrete particulars' showing that a trial is needed."  *Daniels v. D'Aurizo*, 564 F.Supp.2d 194, 197 (W.D.N.Y. 2008) (quoting *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984)).  Plaintiff has not done so.  He may well have disagreed with some of the actions of his jailers and may have felt that certain acts were taken in violation of jail policy, but there is no evidence that any of those acts rose to the level of an actionable violation of plaintiff's rights.  As stated, however, ultimately this Court need not delve into the details of each claim, since, with the exception of the three claims discussed above, they are all barred by failure to exhaust under the PLRA.

**CONCLUSION**

Defendants' motion (Dkt. #39) is granted and the complaint is dismissed as to all defendants.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        November 6, 2008.